UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
SUSAN DONOHUE and MARY "MEG" WILSON,   :
                                       :        12 Civ. 7218 (DLC)
                  Plaintiffs,          :
                                       :        OPINION AND ORDER
         -v-                           :
                                       :
FINKELSTEIN MEMORIAL LIBRARY,          :
                                       :
                  Defendant.           :
                                       :
-------------------------------------- X


APPEARANCES

For the Plaintiffs:

Michael Howard Sussman
Sussman & Watkins
1 Railroad Ave 3/P.O.B. 1005
Goshen, NY 10924


For Finkelstein Memorial Library:

Danielle Marie Dandridge
Hoey, King,& Epstein
55 Water Street 29th Floor
New York,, NY 10041


DENISE COTE, District Judge:

     Susan Donohue ("Donohue") and Mary Wilson ("Wilson") have

brought employment discrimination claims against their employer,

the Finkelstein Memorial Library ("Library"), and the former

Executive Director of the Library, Robert Devino ("Devino"), for

Devino's sexual harassment of each of them.  Shortly after the

plaintiffs complained about Devino's conduct, he was placed on leave and was never allowed to return to work.  Devino was eventually allowed to resign.  The Library now moves for summary judgment.[1]  For the following reasons, the motion is granted in part: the retaliation claims are dismissed.


BACKGROUND

The following facts are undisputed or taken in the light most favorable to the plaintiffs.  The Library is located in Spring Valley, New York; it is a free public library serving the population of Rockland County.  Donohue began working for the Library in 2004 as a librarian in the Children's Department. She eventually became the head of that department, a position she currently holds.  The Library rates it as a Librarian "3" position.

Devino was appointed the Executive Director of the Library in May 2005.  According to the Library's Personnel Policy Manual, the Executive Director "is the principal administrative officer, responsible directly to the Board of Trustees for carrying out Library policy."

On June 13 and 27, 2011, Donohue had two unpleasant

---

[1] Devino was initially named as a defendant in this action, but was never served.  He has been dismissed from this action.

encounters with Devino in which he made sexually suggestive and unprofessional comments to Donohue.  Donohue rebuffed Devino's advances.  In mid-July, Donohue, Devino, and others were attending a meeting outside the Library when Devino noticed that Donohue did not have a pen.  Devino threw one across the table at Donohue and it hit her in the chest.  Concluding that Devino was trying to tell her who was the boss, she decided to complain about his conduct.

On July 18, Donohue met with the human resources officer, Angela Sers ("Sers"), and described the incidents that had occurred in June and July.  Sers was Devino's secretary and recommended that Donohue call Richard Rothbard ("Rothbard"), Chairman of the Library's Board of Trustees, and/or Randy Braun ("Braun"), the Library's attorney.

Donohue called Rothbard, and they spoke on July 19 and met on July 28.  Rothbard outlined two approaches that could be taken.  Donohue could ask for an informal investigation, which would entail a discussion with Devino, a write-up in his personnel file, and a letter of apology to her; or she could request a formal investigation, which would allow Donohue to present her complaint to the Board at a meeting with Devino present.  On August 1, Donohue told Rothbard that she wanted to pursue the formal investigation.  Rothbard notified Braun of her

choice.  Donohue and her counsel were in contact with Braun by August 3.

During August, Braun interviewed Donohue in the presence of her attorney and interviewed others with whom Donohue had discussed the incidents.  In that same month, the Library engaged an outside law firm to conduct the investigation, and it interviewed Donohue again.  During August, Donohue told Wilson for the first time about Devino's behavior and learned from Wilson that Devino had sexually harassed her as well.

Wilson had been working for the Library since 2000 as a Telephone Operator Typist.  Her duties were answering the telephone, scheduling, and typing.  She was never given any other job at the Library over the thirteen years she worked there, despite the fact that she applied for other positions over the course of her employment.  With respect to all of the positions that Wilson applied for, she stated at her deposition that she has no knowledge of her rank on the civil service list for these positions, or the rank of any other applicant.

Shortly after Devino became Executive Director in 2005, he began complimenting Wilson on her physical appearance.  Eventually, Devino made sexual advances, grabbing her and trying to kiss her multiple times in 2010 and 2011.

When Donohue told Wilson in August 2011 of her own

4

experiences with Devino, and with Donohue's encouragement,
Wilson contacted Donohue's attorney in late August 2011.  On
August 30, Wilson told the Library that Devino had been
harassing her.  Devino was immediately placed on administrative
leave.  Outside counsel for the Library interviewed Wilson in
September and October.

Neither Donohue nor Wilson complain that Devino engaged in
improper conduct against them after Donohue lodged her
complaint.  Devino was on vacation during the last week of
August and was never allowed to return to the Library.  On
September 14, the staff was informed that Devino was on a leave
of absence.  On October 16, the Board of Trustees voted to
terminate Devino's employment.  Devino's counsel negotiated that
he be permitted to retire in lieu of termination.  On January 6,
2012, the staff was informed that Devino had retired.

Both Donohue and Wilson complain of certain actions by the
Library in retaliation for their complaints.  Donohue complains
that she was not given a lateral transfer to another Librarian 3
position.  Wilson complains that there was an alteration in her
working conditions and that she was not given a promotion for
which she applied.

On August 2, 2011, it was announced that the Head of
Circulation/Audiovisual Services was retiring.  This position

was listed as a Librarian 3 position, although Donohue had been advised by Sers that it had a higher salary than Donohue's position.  Donohue had applied in July 2011, knowing that the position would be opening up, and another Library employee also applied.  The position was left unfilled for approximately seventeen months.  In January 2013, the position was given to Dora Pozzolli, who was the supervisor in the department. Donohue asserted, during her deposition, that Pozzolli was "not qualified" for the position because Pozzolli did not have a Master of Library Science ("MSL"), which was a job requirement for the position.

Wilson complains that, after she made her internal complaint against Devino in August 2011, she was slowly given less typing work (to a point where she now has none) and that Sers was generally rude to her, including once when Sers yelled at her.  Neither her salary nor hours were reduced.  Wilson further asserts that she was not given a position for which she applied in the Fall of 2012: Senior Library Clerk in the Technical Services department.  This position was filled in December 2012 by another Library employee, Maryann Perschetti. Wilson stated at her deposition that, with regard to the Senior Library Clerk in the Technical Services position, she did not know her own rank on the civil service list or whether

Perschetti was higher on the civil service list.

On October 7, 2011, Wilson submitted a verified complaint to the Equal Employment Opportunity Commission ("EEOC"). This complaint sets forth Devino's inappropriate conduct towards Wilson from Spring 2010 through Summer 2011, that Wilson made no complaint during this time because she was uncomfortable bringing it to the attention of Sers, and that she complained in August 2011 only after she learned of another employee's complaint against Devino. She alleged that Devino's conduct constituted sexual harassment attributable to the Library.

On January 24, 2012, Donohue submitted a verified complaint to the EEOC. This complaint sets forth Devino's inappropriate conduct towards Donohue during June and July of 2011, how she met with Rothbard and decided to pursue formal action in August 2011, and that she learned in January 2012 that Devino had retired. She alleged that Devino caused her to experience a sexually hostile environment, from which she suffered anxiety and other medical issues, including from August to December 2011. Beyond stating Donohue's current position as head of Children's Services, Donohue's EEOC complaint did not state that she had applied for the Head of Circulation/Audiovisual Services in June 2011 or that the position had remained unfilled as of that date.

On September 25, 2012, the plaintiffs filed this action, bringing suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), and New York State Human Rights Law ("NYSHRL"), N.Y. Exec. § 290 et seq.  Each plaintiff asserts that she was subjected to a hostile work environment and that the Library retaliated against her for her complaints regarding Devino.  Following the completion of discovery, on September 20, 2013, the defendant moved for summary judgment on all claims.  The motion was fully submitted as of November 1.

DISCUSSION

Summary judgment may not be granted unless the submissions of the parties taken together "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  The moving party bears the burden of demonstrating the absence of a material fact question, and in making this determination the court must view all facts in the light most favorable to the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  When the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party

8

must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on mere "allegations or denial" of the movant's pleadings.  Fed.R.Civ.P. 56(c); <u>Hicks v. Baines</u>, 593 F.3d 159, 166 (2d Cir. 2010).

"[C]onclusory statements, conjecture, and inadmissible evidence are insufficient to defeat summary judgment." <u>Ridinger v. Dow Jones & Co. Inc.</u>, 651 F.3d 309, 317 (2d Cir. 2011) (citation omitted).  "[F]actual allegations that might otherwise defeat a motion for summary judgment will not be permitted to do so when they are made for the first time in the plaintiff's affidavit opposing summary judgment and that affidavit contradicts [his] own prior deposition testimony." <u>Ramos v. Baldor Specialty Foods, Inc.</u>, 687 F.3d 554, 556 n.2 (2d Cir. 2012).

## A. Hostile Work Environment

Title VII[2] prohibits "a discriminatorily hostile or abusive [work] environment." <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21 (1993).  To prevail on a claim that harassment caused a

---

[2] Claims of employment discrimination under the New York State Human Rights Law are generally analyzed under the same substantive standards that govern claims under Title VII. <u>Leibowitz v. Cornell Univ.</u>, 584 F.3d 487, 498 n.1 (2d Cir. 2009), <u>superseded on other grounds</u>, <u>as recognized in</u> <u>Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.</u>, 715 F.3d 102, 108-109 (2d Cir. 2013).

hostile work environment in violation of Title VII, a plaintiff must establish (1) "that a workplace is so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered," Desardouin v. City of Rochester, 708 F.3d 102, 105 (2d Cir. 2013) (citation omitted), and (2) "a basis for imputing the objectionable conduct to the employer." Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 103 (2d Cir. 2010).

Unlike claims of discrimination based on inter alia disparate treatment, a hostile work environment claim is "based on the cumulative effect of individual acts." National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115 (2002). The plaintiff must show "either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." Desardouin, 708 F.3d at 105 (citation omitted). "Isolated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment." Petrosino v. Bell Atlantic, 385 F.3d 210, 223 (2d Cir. 2004) (citation omitted). "In determining whether the threshold has been met, relevant factors include 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating,

or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Desardouin, 708 F.3d at 105 (quoting Harris, 510 U.S. at 23).

"Moreover, the test has objective and subjective elements: the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive." Rivera v. Rochester Genesee Regional Transp. Authority, 702 F.3d 685, 694 (2d Cir. 2012) (citation omitted). Because Title VII prohibits only discriminatory workplace behavior, a hostile work environment arises only where the relevant conduct occurred "because of" the plaintiff's membership in a protected class. Petrosino, 385 F.3d at 221 (citation omitted); see also Desardouin, 708 F.3d at 105 ("Finally, it is axiomatic that in order to establish a sex-based hostile work environment under Title VII, a plaintiff must demonstrate that the conduct occurred because of her sex." (citation omitted)).

In imputing the existence of a hostile work environment to an employer, courts apply principles of agency law. See Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 754-55 (1998); Jin v. Metropolitan Life Ins. Co., 310 F.3d 84, 91-92 (2d Cir. 2002). The applicable agency law principles vary

depending on the status of the alleged harasser: (1) proxy/alter ego of the employer, (2) a "supervisor,"[3] or (3) a non-supervisor co-worker.

First, if the alleged harasser is a "proxy/alter ego" of the employer, liability is automatic, as the "employer [is held] liable in its own right for [the] wrongful harassing conduct." Townsend v. Benjamin Enterprises, Inc., 679 F.3d 41, 52 (2d Cir. 2012) (citing Faragher v. City of Boca Raton, 524 U.S. 775, 789-92 (1998)). Although the Supreme Court has not definitively stated a test for when an employee is a proxy for the employer, in Farragher it "suggest[ed] that the following officials may be treated as an employer's proxy: a president, owner, proprietor, partner, corporate officer, or supervisor holding a sufficiently high position in the management hierarchy of the company for his actions to be imputed automatically to the employer." Johnson v. West, 218 F.3d 725, 730 (7th Cir. 2000) (quoting Farragher, 524 U.S. at 789-90 (quoting and citing Torres v. Pisano, 116 F.3d 625, 634-35 n.11 (2d Cir. 1997))).

---

3 In Vance v. Ball State Univ., the Supreme Court defined a "supervisor" as one whom "the employer has empowered . . . to take tangible employment actions against the victim, i.e., to effect a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" 133 S. Ct. 2434, 2443 (2013) (quoting Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 761 (1998)).

Second, if the alleged harasser is a supervisor, courts apply principles of vicarious liability, which is "related to, but district from" proxy/alter ego liability. <u>Townsend</u>, 679 F.3d at 52. Under vicarious liability principles, "[a]n employer is presumptively liable for sexual harassment in violation of Title VII if the plaintiff was harassed . . . by someone with supervisory (or successively higher) authority over the plaintiff, although in certain circumstances an affirmative defense may be available." <u>Redd v. New York Div. of Parole</u>, 678 F.3d 166, 182 (2d Cir. 2012). "If the harassment culminate[d] in a tangible employment action, such as discharge, demotion, or undesirable reassignment, the employer is held strictly liable, and no affirmative defense is available." <u>Id.</u> (quoting <u>Ellerth</u>, 524 U.S. at 765). In this context, a tangible employment action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." <u>Pa. State Police v. Suders</u>, 542 U.S. 129, 144 (2004) (citation omitted).

> In the absence of a tangible employment action, the employer may avoid liability by establishing, as an affirmative defense on which it has the burden of proof, two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take

> advantage of any preventive or corrective
> opportunities provided by the employer or to avoid
> harm otherwise.

Redd, 678 F.3d at 182 (quoting Ellerth, 524 U.S. at 765).  The
first element may be shown by "the existence of an
antiharassment policy during the period of the plaintiff's
employment, although that fact alone is not always dispositive."
Ferraro v. Kellwood Co., 440 F.3d 96, 102 (2d Cir. 2006).  For
the second element, "proof that an employee has unreasonably
failed to use the employer's complaint procedure normally
suffices to satisfy the employer's burden."  Id.  Finally, as
the Second Circuit recently held, the "Faragher/Ellerth defense
is unavailable when the alleged harasser is the employer's proxy
or alter ego."  Townsend, 679 F.3d at 53.

Third, if the alleged harasser is a non-supervisory co-
worker, courts apply ordinary negligence principles.  The
plaintiff must show that "the employer either provided no
reasonable avenue for complaint or knew of the harassment but
did nothing about it."  Rojas v. Roman Catholic Diocese of
Rochester, 660 F.3d 98, 107 (2d Cir. 2011) (citation omitted);
see also Petrosino, 385 F.3d at 225 (recognizing such liability
when the employer "reasonably should have known[] about the
harassment but failed to take appropriate remedial action").

The Library moves for summary judgment on the hostile work

14

environment claim.  While it concedes that issues of fact exist as to whether Wilson was subjected to sufficiently severe or pervasive behavior to create a hostile work environment, it argues that Donohue has not shown that she was subjected to sufficiently severe or pervasive behavior to create a hostile work environment.  With respect to both plaintiffs' claims, it further raises the affirmative defense recognized in Faragher-Ellerth.  Since Donohue has offered sufficient evidence of harassment to raise a question of fact for the jury on whether Devino's conduct toward her created a hostile work environment, it is only necessary to address the affirmative defense raised by the Library.

The Faragher-Ellerth defense is unavailable to the Library. Devino was the Executive Director, a role in which he is the primary administrative officer of the Library and directly responsible to the Board of Trustees.  This is analogous to the role of a president in a corporation.  Because an individual holding such a position is deemed the alter ego/proxy of the employer under Faragher, as explained above, Devino too is an alter ego/proxy of his employer, the Library.  Accordingly, as the Court of Appeals held in Townsend, 679 F.3d at 53, the Faragher-Ellerth defense is unavailable where, as here, the alleged harasser is an alter ego/proxy of the employer.  Summary

15

judgment is denied on both plaintiffs' hostile work environment claims.

B.  Retaliation

The Library moves for summary judgment on the retaliation claims on several grounds.  It argues that they are barred because they were not raised in the EEOC complaint.  It argues as well that the plaintiffs have failed to offer sufficient evidence to support their retaliation claims.

1. Exhaustion

Prior to bringing discrimination claims under Title VII, a plaintiff must exhaust available administrative remedies by filing a charge of discrimination with the EEOC.  McPherson v. New York City Dept. of Educ., 457 F.3d 211, 213 (2d Cir. 2006). Claims omitted from an EEOC complaint, however, may still be pursued in a subsequent federal court action if they are "reasonably related" to those asserted in the EEOC filing. Mathirampuzha v. Potter, 548 F.3d 70, 75 (2d Cir. 2008).  This doctrine applies where

> 1) where the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination; 2) where the complaint is one alleging retaliation by an employer against an employee for

16

filing an EEOC charge; and 3) where the complaint
alleges further incidents of discrimination carried
out in precisely the same manner alleged in the EEOC
charge.

Terry v. Ashcroft, 336 F.3d 128, 151 (2d Cir. 2003) (citation
omitted).

Although plaintiffs' retaliation claims were not included
in their EEOC complaints, these claims are exhausted under the
second form of the "reasonably related" doctrine: retaliation
in response to filing an EEOC complaint. Donohue alleges that,
in response to the filing of her EEOC complaint in January 2012,
the Library retaliated by keeping the Head of
Circulation/Audiovisual Services position unfilled for months
and then hiring someone less qualified than Donohue in January
2013. Wilson alleges that, in response to the filing of her
EEOC complaint in October 2011, the Library retaliated by
denying her the Senior Library Clerk in the Technical Services
position in December 2012. Because the retaliatory conduct
alleged in these claims occurred after, and allegedly in
response to, the filing of the EEOC complaint, these claims are
deemed exhausted.

Wilson also alleges that, after informally complaining
about Devino in August 2011, typing work was taken away from her
and Sers was rude to her. Wilson describes this as a cumulative

process beginning in August 2011.  Given that Wilson filed her
EEOC complaint in October 2011, a complaint of retaliatory
conduct occurring after that filing is deemed exhausted.


2. Merits

The Library contends that all of the retaliation claims
fail because the plaintiffs have failed to establish a prima
facie case.  To establish prima facie case of retaliation under
Title VII, a plaintiff must show "(1) she engaged in protected
activity; (2) the employer was aware of that activity; (3) the
employee suffered a materially adverse action; and (4) there was
a causal connection between the protected activity and that
adverse action."  Kelly v. Howard I. Shapiro & Associates
Consulting Engineers, P.C., 716 F.3d 10, 14 (2d Cir. 2013)
(citation omitted).

In the retaliation context, a materially adverse employment
action is one that "well might have dissuaded a reasonable
worker from making or supporting a charge of discrimination."
Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68
(2006) (citation omitted).  This standard is broader than that
which is applied under the substantive antidiscrimination
provision of Title VII, and "extends beyond workplace-related or
employment-related retaliatory acts and harm."  Id. at 67.

Nonetheless, to be "materially adverse," a change in working conditions must be "more disruptive than a mere inconvenience or an alteration of job responsibilities."  Brown v. City of Syracuse, 673 F.3d 141, 150 (2d Cir. 2012) (citation omitted).

In University of Tex. Sw. Med. Ctr. v. Nassar, 133 S.Ct. 2517, 2528 (2013), the Supreme Court held that "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action."  A plaintiff may satisfy the causation requirement in one of two ways:

> (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.

Hicks v. Baines, 593 F.3d 159, 170 (2d Cir. 2010) (citation omitted).  "[T]he court's role in evaluating a summary judgment request is to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive."  Id. at 164 (citation omitted).

Donohue has not submitted sufficient evidence to permit a rational finder of fact to infer that her protected conduct was the but-for cause of the allegedly retaliatory act. Accordingly, Donohue has not made out a prima facie case for her

19

retaliation claim.

Donohue contends that she has submitted indirect evidence of a causal connection because the protected activity was "followed closely" by the retaliatory act.  This argument fails.  The alleged retaliatory act here is the hiring of another person for the Head of Circulation.  This act occurred in January 2013, twelve months after the protected activity, as the EEOC complaint was filed in January 2012.  An event that follows a year later does not "follow[] closely."  See Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001) (citing with approval decisions by the Seventh and Tenth Circuits holding that a three-month and four-month delay was insufficient to raise an inference of causality).

Wilson's retaliation claim based on her not being hired as Senior Library Clerk in the Technical Services also fails.  Wilson has presented no evidence raising a question of fact that, but for her filing of the EEOC charge in 2011, she would have been hired for the position in 2012.

Wilson attempts to point to her declaration, filed with her opposition to summary judgment, in which she asserts that she was ranked first for the library clerk position.  This attempt to create a genuine issue of material fact fails.  Wilson stated at her deposition that she did not know her rank on the civil

20

service list for this position, and she may not seek to create an issue of fact by contradicting that testimony in her declaration.

Wilson's retaliation claim based on her reduced typing and Sers's alleged rudeness does not survive summary judgment. Inconveniences and alterations in job responsibilities are not materially adverse employment actions, and Wilson has failed to raise a question of material fact that the alleged retaliatory conduct is anything but minor irritations.

CONCLUSION

The September 20, 2013 motion for summary judgment is granted in part.  The retaliation claims are dismissed.

Dated:    New York, New York
          December 16, 2013

                        _____
                              DENISE COTE
                        United States District Judge